**John M. OGLESBY, Plaintiff,**

v.

**DELAWARE AND HUDSON RAILWAY COMPANY and General Motors Corporation, Defendants.**

**No. 86–CV–1133 (LEK/RWS).**

United States District Court, N.D. New York.

Feb. 10, 1997.

Elkind, Flynn Law Firm, New York City, for Plaintiff; Ira M. Maurer, of counsel.

Kirkpatrick, Lockhart Law Firm, Boston, MA, for Defendant Delaware And Hudson Railway Company; Thomas L. Crotty, of counsel.

Thorn, Gershon Law Firm, Albany, NY, for Defendant General Motors Corporation; Arthur H. Thorn, of counsel.

## MEMORANDUM-DECISION AND ORDER

KAHN, District Judge.

Presently before the Court is a motion for summary judgment filed by the defendant General Motors Corporation ("GM"). Also before the Court is plaintiff's cross-motion to reinstate several previously dismissed claims. Oral arguments on this matter were heard on October 18, 1996, in Albany, New York. Decision was reserved.

## I. FACTS

This action brought under the Federal Employers' Liability Act ("FELA") has had a long and arduous journey through the Court since its inception over ten years ago. On August 13, 1986, plaintiff John M. Oglesby ("Oglesby"), a trainman employed by the defendant Delaware and Hudson Railway Company ("D & H"), allegedly suffered a severe lower back injury while attempting to adjust the position of an engineer's seat located on a locomotive. The seat, designed by GM, consists of a platform connected to a pin and a tripod mount which is in turn attached to a track along the side of the engine wall. Hon. Con. G. Cholakis, Memorandum–Decision and Order, July 19, 1994. The design allows the seat to be moved horizontally along the track so that the engineer can access different sections of the train engine. *Id.* By removing the pin from the tripod mount which weighs 11 pounds, the seat, which weighs 62 pounds, can be removed from the rest of the assembly so that the apparatus can be moved more easily. *Id.*

Plaintiff alleges that his injury occurred while attempting to move the seat. Specifi-

cally, Oglesby claims that on a first attempt, he was unable to move the assembly. On a second attempt, during which he applied more force, the apparatus moved suddenly and he sustained a severe back injury in a twisting fall. Plaintiff asserts that the design of the chair and track produced too much friction and therefore required a dangerous amount of effort to move the seat. Oglesby did not remove the chair from the rest of the assembly and claims that he was not warned that injury could occur if he failed to do so. The Plaintiff argues that a warning or instruction label should have been placed on the cab seat by GM. Defendant has conceded that there were no warnings on the assembly and that it never safety tested the product. *Id.* The amended complaint raises claims of product liability including defective design, defective manufacture and failure to warn as well as claims based in negligence and breach of warranty.

In the Memorandum–Decision and Order dated July 19, 1994, the claims relating to defect in design and manufacture were dismissed against GM on the grounds that the plaintiff's expert was not qualified and therefore the plaintiff's claims were unsupportable. Shortly thereafter, the parties stipulated to the withdrawal of the state law claims based on breach of warranty on statute of limitations grounds. Thus, the only claim remaining against GM is for negligent failure to warn.

On January 23, 1995, Judge Cholakis granted the plaintiff's request to reopen discovery for the limited purpose of obtaining and deposing a new expert. On November 17, 1995, Judge Cholakis granted GM's motion to file its third amended answer. The current summary judgment motion followed. GM's motion is based on the theory that federal law, specifically the Locomotive Boiler Inspection Act and the Federal Railroad Safety Act, occupy the entire field of law and therefore the plaintiff's tort claim is preempted. After securing a new expert and completing the discovery process in that regard, the plaintiff now moves to reinstate the defective manufacture and design claims which were previously dismissed. Each motion will be addressed in turn.

## II. *DISCUSSION*

### A. Summary Judgment Standard

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Pub., Co.,* 949 F.2d 576, 580 (2d Cir.1991). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986); *Project Release v. Prevost,* 722 F.2d 960, 968 (2d Cir.1983).

When the moving party has met the burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* 475 U.S. at 586, 106 S.Ct. at 1355. At that point, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56: *Liberty Lobby Inc.,* 477 U.S. at 250, 106 S.Ct. at 2511; *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. at 1356. To withstand a summary judgment motion, evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby, Inc.,* 477 U.S. at 248–249, 106 S.Ct. at 2510–2511; *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. at 1356. Thus, summary judgment is proper where there is "little or no evidence … in support of the non-moving party's case." *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223–1224 (2d Cir.1994) (citations omitted)

### 1. Federal Preemption

Defendant contends that the plaintiff's tort claims are preempted by federal law. Gen-

erally, "[w]here a state statute conflicts with or frustrates federal law, the former must give way." *CSX Transp., Inc. v. Easterwood,* 507 U.S. 658, 663, 113 S.Ct. 1732, 1737, 123 L.Ed.2d 387 (1993) (citing U.S. Const., Art. VI, cl. 2; *Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 2128, 68 L.Ed.2d 576 (1981)). "Consideration of issues arising under the Supremacy Clause 'start[s] with the assumption that the historic police powers of the States [are] not to be superseded by ... Federal Act unless that [is] the clear and manifest purpose of Congress.'" *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992) (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)). "Evidence of pre-emptive purpose is sought in the text and structure of the statute at issue." *CSX Transp.,* 507 U.S at 664, 113 S.Ct. at 1737 (citing *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 95, 103 S.Ct. 2890, 2898, 77 L.Ed.2d 490 (1983)).

"Congress' intent may be 'explicitly stated in the statute's language or implicitly contained in its structure and purpose.'" *Cipollone,* 505 U.S. at 516, 112 S.Ct. at 2617 (quoting *Jones v. Rath Packing Co.,* 430 U.S. 519, 525, 97 S.Ct. 1305, 1309, 51 L.Ed.2d 604 (1977)). "In the absence of an express congressional command, state law is pre-empted if that law actually conflicts with federal law ..." *Id.* (citing *Pacific Gas & Elec. Co. v. State Energy Resources Conservation and Dev. Comm'n,* 461 U.S. 190, 204, 103 S.Ct. 1713, 1722, 75 L.Ed.2d 752 (1983)). In addition, state law is preempted if the "federal law so thoroughly occupies a legislative field 'as to make reasonable the inference that Congress left no room for the States to supplement it.'" *Id.* (quoting *Fidelity Fed. Sav. & Loan Assn. v. de la Cuesta,* 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (quoting *Rice,* 331 U.S. at 230, 67 S.Ct. at 1152)).

Defendant asserts that both the Locomotive Boiler Inspection Act and the Federal Railroad Safety Act provide grounds for preemption of the plaintiff's claim.

### a. Preemption Under the Locomotive Boiler Inspection Act

■ GM argues that the federal Locomotive Boiler Inspection Act ("LBIA") preempts any state or local regulation covering the same subject, in this instance, the plaintiff's failure to warn claim. Defendant contends that 49 C.F.R. § 229.119 (1996) addresses locomotive engineer seats and therefore preemption applies.[1] Plaintiff asserts that the preemption only applies to railroads, not manufacturers such as GM. Oglesby further argues that the specific section cited by GM does not expressly address the issue of failure to warn or the proper weight of the seat or its functional design.

■ The LBIA prohibits railroads from operating trains unless "its boiler, tender, and all parts and appurtenances thereof are in proper condition and safe to operate ...." " and that the trains "be employed in the active service of such carrier without unnecessary peril to life or limb...." 45 U.S.C.A. § 23 (1986). "The [L]BIA supplements the FELA to provide additional public protection and facilitate employee recovery." *King v. Southern Pacific Transp. Co.,* 855 F.2d 1485, 1488 n. 1 (10th Cir.1988) (citing *Urie v. Thompson,* 337 U.S. 163, 189, 69 S.Ct. 1018, 1034, 93 L.Ed. 1282 (1949)). The LBIA "is to be liberally construed in the light of its primary purpose, the protection of employees and others by requiring the use of safe equipment." *Lilly v. Grand Trunk, W.R.R.,* 317 U.S. 481, 486, 63 S.Ct. 347, 351, 87 L.Ed. 411 (1943). "Liability under the FELA is premised on the railroad's negligence, however small." *King,* 855 F.2d at 1488 n. 1 (citing 45 U.S.C. § 51; *Rogers v. Missouri Pac. R.R.,* 352 U.S. 500, 508–09, 77 S.Ct. 443, 449–50, 1 L.Ed.2d 493 (1957)). "In contrast, the [L]BIA imposes on the carrier an absolute duty to maintain the locomotive, and all its parts and appurtenances, in proper condition, and safe to operate without

---

1. The section, in pertinent part, reads:

Cabs, Floors, and Passageways.

(a) Cab seats shall be securely mounted and braced. Cab doors shall be equipped with a secure and operable latching device.

49 C.F.R. § 229.119(a) (1996).

unnecessary peril to life or limb." *Id.* (citing *Lilly,* 317 U.S. at 485, 63 S.Ct. at 350). "The duty imposed is an absolute one, and the carrier is not excused by any showing of care, however assiduous." *Brady v. Terminal R. Ass'n of St. Louis,* 303 U.S. 10, 15, 58 S.Ct. 426, 429, 82 L.Ed. 614 (1938) (citations omitted).

"The scope of preemption under the [LBIA] is determined by the interpretation of the words 'parts and appurtenances.'" *Marshall v. Burlington Northern, Inc.,* 720 F.2d 1149, 1152 (1983). "The Supreme Court interpreted the phrase ... as encompassing '[w]hatever the fact is an integral or essential part of a completed locomotive, and all parts or attachments definitely prescribed by lawful order of the [Secretary]....'" *Id.* (quoting *Southern Ry. Co. v. Lunsford,* 297 U.S. 398, 402, 56 S.Ct. 504, 506, 80 L.Ed. 740 (1936)).

Defendant cites a litany of cases that illustrate the LBIA's preemptive effect. The common theme among them is that the LBIA prohibits state regulations which directly conflict with the safety protocol set forth in the Act. For example, in *Napier v. Atlantic Coast Line,* the Supreme Court ruled that a Georgia statute which required an "automatic door to the firebox" on a locomotive was preempted by the LBIA. 272 U.S. 605, 607, 47 S.Ct. 207, 208, 71 L.Ed. 432 (1926). The Georgia regulation indisputably raised the level of safety over that prescribed in the LBIA. However, the Court commented that it was the duty of the Commission to "prescribe the rules and regulations by which fitness for service shall be determined." *Id.* at 612, 47 S.Ct. at 209. Ultimately, it was found that Congress intended the LBIA "to occupy the entire filed." *Id.* at 613, 47 S.Ct. at 210. Despite the fact that the Georgia regulation promoted safety to a greater extent than the Act itself, it was noted that "the fact that the Commission has not seen fit to exercise its authority to the full extent conferred, has no bearing upon the construction of the Act delegating the power." *Id.* at 613, 47 S.Ct. at 210. "Because the standard set by the Commission must prevail, requirements by the States are precluded, however commendable or however different their pur-

pose." *Id.* The Court concluded its decision by noting that "[i]f the protection now afforded by the Commission's rules is deemed inadequate, application for relief must be made to it." *Id.*

Although this issue has never been addressed by the Second Circuit, similar state statutes were found to be preempted by the LBIA in various circuits and districts across the country. For example, in *Missouri Pacific R.R. v. Railroad Comm'n of Texas,* the Sixth Circuit considered a Texas statute that required railroads to use cabooses for safety purposes. 850 F.2d 264, 268 (5th Cir.1988). In holding that the regulation was preempted by the Federal Railroad Safety Act ("FRSA"), it was noted that under the LBIA, "virtually all state regulations affecting the train itself appear to be preempted by federal law." *Id.* In addition, in *Consolidated Rail Corp. v. Pennsylvania Pub. Util. Comm'n,* a district court found that a Pennsylvania statute requiring the use of speed recorders and indicators was found to be preempted by the LBIA and FRSA. 536 F.Supp. 653 (1982). While it is without question that state statutes which attempt to cover the same area as the LBIA are preempted, it must be determined whether a state tort claim is also preempted under the LBIA.

### i. Preemption of Common Law Claims Under the LBIA

Once again, the Second Circuit has not addressed the question of LBIA preemption of common law claims. However, the Ninth Circuit determined that a plaintiff was not entitled to damages for the common law tort of the wrongful death of her husband after she argued that the train which struck him at a railroad crossing did not have adequate warning equipment. *Marshall,* 720 F.2d 1149, 1152 (1983). The court concluded that "under the [Locomotive] Boiler Inspection Act the state may not impose liability for failure to install a part or attachment of a locomotive if it is 'within the scope of the authority delegated to the [Secretary]' to prescribe the same part or attachment." *Id.* (quoting *Napier,* 272 U.S. at 611, 47 S.Ct. at 209). The Ninth Circuit determined that it was within the "Secretary's authority to pre-

scribe strobe or oscillating lights for locomotives, and any state regulation is therefore preempted." *Id.*

On its face, *Marshall* could be viewed as supporting the defendant's argument that the realm of cab seating is preempted by the LBIA. However, the LBIA regulations involving warning lights are much more detailed than those involving cab seats. While the regulation involving cab seats merely states that "[c]ab seats shall be securely mounted and braced," 49 C.F.R. § 229.119 (1996), the regulations for warning lights and headlights are much more precise.[2] In short, the regulations require a specific power amount for the headlights, a minimum illumination distance, and requirements for lighting on the rear of the locomotive. *See* 49 § 229.129 (1996). This regulation sets forth specific and adequate specifications for headlights. Any state regulation in the area of warning lights would most likely conflict with the LBIA regulations and preemption seems perfectly appropriate. In contrast, the simple requirement that cab seats be "securely mounted and braced" leaves much unanswered. Surely, it is not difficult to imagine a cab seat that is sufficiently secured and braced, yet is woefully defective in design and can cause serious injury to a user.

However, the *Marshall* does hold that common law claims can be preempted under the LBIA. Thus, the Court will continue the analysis under the assumption that a plaintiff's state common law claim could be preempted under the LBIA.[3]

### ii. Plaintiff's Failure to Warn Claim

In support of the argument that the plaintiff's failure to warn claim is also preempted under the LBIA, defendant cites *King v. Southern Pac. Transp. Co.*, 855 F.2d 1485 (10th Cir.1988). *King* is a product liability action against a railroad for an allegedly defective cab seat. *Id.* In *King*, the plaintiff, a railroad brakeman, brought suit against the railroad for alleged injuries he sustained during a collision between the locomotive he was running and a truck at a railroad crossing. *Id.* at 1486. Many of Southern Pacific's ("SP") trains had armrests on the cab seats, and under its contract with the railroad union, SP was obligated to provide them. *Id.* However, the cab seat in which the plaintiff was sitting did not have armrests. Plaintiff brought an action under the LBIA alleging that he sustained injuries which could have been avoided had the railroad installed armrests and seat belts as additional safety devices in their cab seats.

The court distinguished cases involving failure to maintain a locomotive and its appurtenances and claims involving a railroad's failure to "install additional safety devices which the Secretary of Transportation has not seen fit to require." *Id.* at 1489. While acknowledging that the LBIA should be liberally construed to protect those injured, it

---

2. The regulation reads:
  (a) Each headlight used in road service shall have a headlight that produces at least 200,000 candela. If a locomotive or locomotive consist in road service is regularly required to run backward for any portion of its trip other than to pick up a detached portion of its train or to make terminal movements, it shall also have on its rear a headlight that produces at least 200,000 candela. Each headlight shall be arranged to illuminate a person at 800 feet ahead and in front of the headlight.
  (b) Each locomotive or locomotive consist used in yard service shall have two headlights, one located on the front of the locomotive or locomotive consist and one on its rear. Each headlight shall produce at least 60,000 candela and shall be arranged to illuminate a person at least 300 feet ahead and in front of the headlight.
  (c) Headlights shall be provided with a device to dim the light.
 49 C.F.R. § 229.125 (1996).

3. Plaintiff contends that the LBIA preempts suits only against a railroad and not against a manufacturer. The Court is unconvinced. The logic behind field preemption does not support the premise that one defendant would be excused from suit and a different defendant would be open to suit on the same legal theory. Several courts have found that common law claims which are legitimately preempted under the LBIA because they conflict with the Act are invalid against both a railroad and manufacturer. *See Springston v. Consolidated Rail Corp.*, 863 F.Supp. 535 (N.D.Ohio 1994) (common law claims against railroad and manufacturer involving inadequate warning devices preempted by the LBIA); *Law v. General Motors Corp.*, 1995 WL 542496, *6 (N.D.Cal.1995) (state causes of action preempted by LBIA's occupation of the field).

was noted that "it is whatever 'in fact is an integral or essential part of a completed locomotive, and all parts or attachments definitely prescribed by lawful order of the [Secretary]' that is within the statute's reach." *Id.* at 1490 (citing *Lunsford,* 297 U.S. at 402, 56 S.Ct. at 506). In finding that the claim did not fall under the LBIA, the court concluded that armrests did not rise to the level of being an essential part of a completed locomotive and noted that in 49 C.F.R. § 229.11(a), armrests were simply not considered.

While *King* is more on point than *Marshall,* it is easily distinguishable. By arguing that plaintiff's state tort claim is preempted by the LBIA, the defendant is asserting that if the plaintiff were successful, it would subvert the requirements set forth in the Act. In other words, if the plaintiff were to prevail on his failure to warn claim, the essence of the outcome would be that the manufacturer should have included an instruction label on the seat that would have warned of possible injury if the seat were moved without following certain precautions. The end result would be that labels would have to be present to avoid liability. The defendant argues that by requiring the addition of that label to the seat, the supremacy of the LBIA requirements is lost since no such requirement exists under the Act. This argument is not convincing.

A main theme that runs through all of the cases discussed is uniformity. The LBIA sets forth a minimum level of safety standards which are uniform across the nation. This assists railroads in their quest for interstate commerce and avoids the difficulties associated with conflicting safety standards when crossing state boundaries. Armrests, headlights, seat belts, speed indicators, cabooses, and firebox doors are all safety related. Each of these items could be and many

have been the subject of detailed rules set forth by the Secretary. The plaintiff's claim for failure to warn demands a label instructing an individual on the proper use of the specific cab seat manufactured by GM. An instruction label is not a safety device. On the contrary, a warning regarding the specific cab seat made by a specific manufacturer would never appear in a rule regarding cab seats by the Secretary. Thus, while certain common law claims against manufacturers have been preempted because they conflicted with the LBIA, a label which instructs an individual on the proper use of a specific item does not fall into the same category.

Defendant asserts that the LBIA requires labeling in several different areas covered by the regulations and therefore the Secretary would have chosen to require a label for cab seats if a label was needed. Defendant cites several rules that involve labeling, but none of them involve the proper use of the item that is labeled.[4] Quite simply, it is beyond the scope of the Secretary's vision to require labels for the proper use of certain equipment which varies from manufacturer to manufacturer. The duty of instructing a user to avoid possible injury rests solely with the entity that manufactures the item. Therefore, the Court concludes that the failure to warn claim against GM for the proper use of the cab seat is not preempted under the LBIA.

### b. Preemption Under the Federal Railroad Safety Act [5]

Congress enacted the Federal Railroad Safety Act ("FRSA") in 1970 to "promote safety in all areas of railroad operations and to reduce railroad-related accidents, and to reduce deaths and injuries to persons and to reduce damage to property caused by accidents involving any carrier of hazardous materials." 45 U.S.C.A. § 421 (repealed

---

**4.** 49 C.F.R. § 210.27(d) involves a tag which states the results of a noise level test; § 215.9(a)(3) concerns the tagging of railroad cars which need repair; § 215.303 involves the labeling of restricted freight cars; § 218.73 concerns the labeling of cars which are occupied; § 223.17 covers glazing car windows; § 229.85 discusses a warning for the presence of high voltage equipment; and § 229.113 covers a

warning that is placed upon steam generators that are malfunctioning.

**5.** It is important to note that Congress repealed the Federal Railroad Safety Act in 1994. 45 U.S.C.A. §§ 421 and 431–447 (Supp.1996). However, the Court will continue with an analysis since the statute was in effect during the relevant time in this action.

1994). The FRSA further provides that the Secretary shall "prescribe, as necessary, appropriate rules, regulations, orders, and standards for all areas of railroad safety supplementing provisions of law and regulations in effect on October 16, 1970."[6] 45 U.S.C.A. § 431 (repealed 1994).

Preemption under the FRSA is set forth in § 434. 45 U.S.C.A. § 434 (repealed 1994).[7] Under that section, the

> States are permitted to 'adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the same subject matter of such State requirement.' Even after federal standards have been promulgated, the States may adopt more stringent safety requirements 'when necessary to eliminate or reduce an essentially local safety hazard,' if those standards are 'not incompatible with' federal laws or regulations and not an undue burden on interstate commerce.

*CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 662, 113 S.Ct. 1732, 1736, 123 L.Ed.2d 387 (1993). Thus, unlike the LBIA, the FRSA offers the State's the power to adopt more stringent regulations in certain circumstances.

Defendant cites *CSX* as authority for preemption of the plaintiff's claim. In that case, the plaintiff brought a wrongful death action against a railroad stemming from an accident which occurred at a railroad crossing, killing Thomas Easterwood. *Id.* at 661, 113 S.Ct. at 1736. The wife of the Easterwood claimed that the defendant was "negligent under Georgia law for failing to maintain adequate warning devices at the crossing and for operating the train at an excessive speed." *Id.* It was determined that the plaintiff's excessive

speed claim was preempted because the Secretary had set forth detailed regulations regarding locomotive speed. *Id.* at 673–75, 113 S.Ct. at 1742–43. However, the Court found that the plaintiff's claim for failure to maintain the railroad crossing under Georgia law was not preempted because federal funds were not utilized in the improvement of the crossing in question, and therefore the FRSA did not apply. *Id.* at 672–73, 113 S.Ct. at 1741–42.

As discussed in detail in the prior section, the label in question in the case at bar is not a safety device and would not be the subject of a regulation of the Secretary or of a state. Rather, the label is merely an instructive device so that a user would know the proper method of moving the cab seat. Because there is no question of a regulation, there is therefore no way that preemption could apply. Thus, the plaintiff's failure to warn claim is not preempted under the FRSA.

### B. *Plaintiff's Motion to Reinstate Dismissed Claims and The "Law of the Case" Doctrine*

◼ Plaintiff's have cross-moved to reinstate the claims which were dismissed by Judge Cholakis in his July 19, 1994 Memorandum–Decision and Order. Plaintiff requests the Court to exercise its revisionary powers under Fed.R.Civ.P. 54(b). Plaintiff asserts that Judge Cholakis permitted Oglesby to retain a new expert and that justice requires that the dismissed claims be reinstated. Defendant asserts that the "law of the case" doctrine should apply and that plaintiff should not get a "second bite at the apple" after failing to meet their burden of proof at the earlier summary judgment motion.

---

**6.** Thus, the FRSA is meant to supplement, not replace, the LBIA.

**7.** The section reads:
The Congress declares that laws, rules, regulations, orders, and standards relating to railroad safety shall be nationally uniform to the extent practicable. A State may adopt or continue in force any law, rule, regulation, order, or standard relating to railroad safety until such time as the Secretary has adopted a rule, regulation, order, or standard covering the

subject matter of such State requirement. A State may adopt or continue in force an additional or more stringent law, rule, regulation, order, or standard relating to railroad safety when necessary to eliminate or reduce an essentially local safety hazard, and when not incompatible with any Federal law, rule, regulation, order, or standard, and when not creating an undue burden on interstate commerce. 45 U.S.C.A. § 434 (repealed 1994).

"The law of the case doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Pescatore v. Pan Am. World Airways, Inc.,* 97 F.3d 1, 7–8 (1996) (citing *DiLaura v. Power Auth. of the State of N.Y.,* 982 F.2d 73, 76 (2d Cir.1992) (quoting *In re PCH Assocs.,* 949 F.2d 585, 592 (2d Cir. 1991))). The Court finds that the law of the case should stand and that the previously dismissed claims should not be reinstated.

Finally, the plaintiff has requested leave to amend their answers to defendant's interrogatories to assert a failure to warn claim sounding in strict liability. Defendant has not opposed this request. Because the failure to warn claim is the only claim left and there is no opposition, the request is granted.

Accordingly, it is ORDERED that the defendant's motion for summary judgment is DENIED; and it is further

ORDERED that the plaintiff's cross-motion to reinstate the previously dismissed claims is DENIED; and it is further

ORDERED that plaintiff's request to amend their answers to the defendant's interrogatories is GRANTED; and it is further

ORDERED that the Clerk shall serve a copy of this order on all the parties by regular mail.

IT IS SO ORDERED.