Charles **LORINCIE**

v.

**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY**

v.

**Coach & Car Equipment Co.**

**Civil Action No. 95–7107.**

United States District Court, E.D. Pennsylvania.

Sept. 29, 1998.

Robert A. Kosseff, Robert A. Kosseff and Associates, Philadelphia, PA, for Charles Lorincie, Ellen Lorincie, Beth Lorincie.

Richard A. Kraemer, Marshall, Dennehey, Warner, Coleman and Goggin, Philadelphia, PA, for Coach & Car Equipment Company, TMB Associates, Inc.

### OPINION

POLLAK, District Judge.

On January 5, 1998, defendant Coach & Car Equipment Co. ["Coach & Car"] filed a Motion for Summary Judgment for the claims brought against it by plaintiffs Charles and Ellen Lorincie for injuries allegedly suffered by Mr. Lorincie while attempting to operate a Coach & Car engineer's cab seat in the train in which he worked. Mr. Lorincie, who alleges that he was injured while seeking to move the seat from its upright to its closed position, states that he has suffered severe back injuries and is permanently disabled. The Lorincies claim that the seat was defectively and negligently designed, and that defendant breached the implied warranty of merchantability. Coach & Car asserts that the Locomotive Boiler Inspection Act, 49 U.S.C. §§ 20701–20903 ["BIA" or "Act"], preempts all state common law remedies against railroad manufacturers for injuries arising out of alleged design defects in trains, and that the Lorincies' claims must therefore be dismissed with prejudice. Plaintiffs deny that the BIA preempts such claims.

### I.

Summary judgment is appropriate where "the moving party establishes that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In the face of a motion for summary judgment asserting the absence of evidence to support the non-movant's claim, *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the non-movant must make an evidentiary showing, based on the affidavits, depositions and admissions of record, sufficient, if credited by the fact-finder, to establish the existence of every element essential to the non-movant's claim. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Harter v. GAF Corp.,* 967 F.2d 846, 852 (3d Cir.1992). The non-movant's evidence must relate to factual disputes that are "material", i.e., disputes that under the substantive law could affect the outcome of the case. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Conclusory allegations in pleadings or briefs do not suffice to establish a genuine issue of material fact. *Pastore v. Bell Telephone Co. of Pennsylvania,* 24 F.3d 508, 511 (3d Cir.1994). Nor do conclusory allegations in an affidavit. *Lujan v. National Wildlife Federation,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). In determining whether an issue of material fact exists, a court must construe evidence in the light most favorable to the non-moving party. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

Defendant here claims that there is no genuine issue of material fact because plaintiffs' claims—all of which sound in state common law—are preempted under the Supremacy Clause of the Constitution by the BIA. If defendant is correct, then by definition there are no genuine issues of material fact, since plaintiffs have no claims, and the motion must be granted. If the claims are not preempted, however, then every aspect of the complaint denied by the defendant remains material, and the motion must be denied.

### II.

The Supremacy Clause states that "the Laws of the United States ... shall be

the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. Art. VI, cl. 2. Generally, "where a state statute conflicts with or frustrates federal law, the former must give way." *CSX Transp. Inc., v. Easterwood,* 507 U.S. 658, 663, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993). A court considering a preemption claim should "start with the assumption that the historic police powers of the States [are] not to be superseded" unless Congress has indicated that preemption is its "clear and manifest purpose." *Cipollone v. Liggett Group,* Inc., 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (citation and internal quotation marks omitted). Such an assumption should reach the level of a strong presumption where the federal law is directed at subjects "traditionally governed" by the states, such as health and safety. *CSX,* 507 U.S. at 664, 113 S.Ct. 1732. Congressional intent "may be explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Id.* As a doctrinal matter, preemption has been divided into three categories: express preemption, where Congress specifies preemption in the text of an act; field preemption, where federal regulation is so pervasive that one may reasonably infer that Congress intended to dominate the field and preclude state laws; and conflict preemption, where federal and state law actually conflict and a private party cannot possibly comply with both requirements. *English v. General Electric Co.,* 496 U.S. 72, 78–79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990). The three categories, however, are mere manifestations of a single underlying question: did Congress intend preemption? *Id.* The party claiming preemption carries the burden of proving such intent. *De Canas v. Bica,* 424 U.S. 351, 96 S.Ct. 933, 47 L.Ed.2d 43 (1976).

### A.

The Supreme Court addressed the issue of BIA preemption in *Napier v. Atlantic Coast*

*Line R.R.,* 272 U.S. 605, 47 S.Ct. 207, 71 L.Ed. 432 (1926). *Napier* consolidated two cases in which railroad carriers had sought to enjoin state officials from enforcing state laws prohibiting use of railroads not equipped with prescribed devices: in one case a statute requiring an automatic door to the firebox, in the other a regulation requiring a cab curtain.[1] In a unanimous, opinion, the Court held that "state legislation is precluded, because the [BIA], as we construe it, was intended to occupy the field." *Id.* at 613, 47 S.Ct. 207. The defendant state officials had contended that the field should be defined by the aim of the federal legislation—railroad safety—rather than by its subject—locomotive equipment—and that state legislation aimed at employee health should therefore be permitted because it regulated a different field. Justice Brandeis, writing for the Court, rejected that view, finding the field determined by its "subject"—locomotive equipment—not its purpose. *Id.* at 612, 47 S.Ct. 207. The state officials had further contended that because the administrative agency charged with implementing the BIA had not issued regulations concerning fireboxes and cab curtains, the states were free to regulate in those areas. *Napier*'s rejection of this contention was unequivocal: "The fact that the [administrative agency] has not seen fit to exercise its authority to the full extent conferred, has no bearing upon the construction of the act delegating the power." *Id.* at 613, 47 S.Ct. 207.

■ *Napier* thus precludes two of plaintiffs' primary attempts to distinguish their case. Plaintiffs claim that because engineer's seats are not heavily regulated by the BIA, the Act does not preclude state common law claims regarding them. In *Napier,* however, the administrative agency had failed to issue *any* regulations regarding the relevant locomotive parts; the Court nevertheless found preemption. In this case, where the agency has issued a regulation (albeit a one-line regulation irrelevant to plaintiffs' claimed defects[2]), state regulation would also

---

**1.** The Court deemed the purpose of both state requirements to be protection of the health and comfort of engineers and firemen. *Id.* at 609–10, 47 S.Ct. 207.

**2.** 49 C.F.R. § 229.119(a) (1996) reads, in pertinent part: "Cab seats shall be securely mounted and braced."

be preempted. The unregulated or thinly regulated status of a locomotive part does not render it immune to preemption under *Napier.*

█ Similarly, *Napier* defeats plaintiffs' claim that the BIA only preempts state law regulation of locomotive parts related to railroad safety. One could plausibly draw a line between locomotive equipment related and unrelated to railroad safety, and correctly claim that state law dealing with railroad safety has been the subject of almost every suit since *Napier* in which a court has found BIA preemption. *See e.g. Law v. General Motors Corp.,* 114 F.3d 908 (9th Cir.1997) (brakes and engines); *Marshall v. Burlington Northern, Inc.,* 720 F.2d 1149 (9th Cir. 1983) (warning lights and equipment); *Springston v. Consolidated Rail Corp.,* 863 F.Supp. 535 (N.D.Ohio 1994) (warning devices); *Consolidated Rail Corp. v. Pennsylvania Pub. Util. Comm'n,* 536 F.Supp. 653 (E.D.Pa.1982) (speed recorders and indicators); *In re: Train Collision at Gary, Indiana on January 18, 1993,* 670 N.E.2d 902 (Ind.App.1996) (crash prevention equipment). But *Napier* itself forbids drawing such a line. The *Napier* court specifically rejected plaintiffs' argument that "the federal and the state laws are aimed at distinct and different evils ... that whether Con-

gress has entered a field must be determined by the object sought through the legislation, rather than the physical elements affected by it." 272 U.S. at 612, 47 S.Ct. 207. Indeed, the plaintiffs in *Napier* sought specifically to distinguish between the BIA's purpose (railroad safety) and the purpose of the state regulations (engineer health and comfort). The Court, without discussion, held such a distinction insignificant, and found that the "federal and the state statutes are directed to the same subject—the equipment of locomotives." *Id.* While plaintiffs' distinction between railroad safety issues and issues of employee health and comfort may be rational, it is foreclosed by *Napier.*

Two of plaintiffs' claims, however, are not addressed by *Napier.* First, plaintiffs claim that though state statutes or regulations may be preempted, state common law tort claims are not. Second, plaintiffs claim that the BIA applies to railroad carriers, and possibly to carrier-manufacturers, but not to manufacturers that are not carriers. Neither issue has been addressed by the Supreme Court, and both are questions of first impression in the Third Circuit.[3] Because I find below that the BIA does not preempt state common law actions against railroad manufacturers that are not also carriers, I do not consider

---

3. In *Heiselmoyer v. Penn. Railroad Co.,* 243 F.2d 773 (3d Cir.1957), the Third Circuit considered an engineer plaintiff's claims against a railroad carrier for injuries allegedly sustained as a result of the carrier's use of a negligently constructed locomotive seat, a defective brake, and the negligence of an employee of the carrier. The plaintiff's claims rested on both traditional state common law claims—defects in the construction of the seat and in its placement in the path of a brake valve—and a claim that the defective brake failed to conform to BIA requirements. The court, which considered plaintiff's challenges to the district court's jury instructions and to defense counsel's closing statements, did not address the issue of preemption, which appears to remain open in this Circuit.

Several courts outside this Circuit have addressed BIA preemption of state common law claims. *Compare, e.g., Law v. Gen'l Motors Corp.,* 114 F.3d 908 (9th Cir.1997) (BIA preempts all state common law claims against railroad manufacturers for design defects) and *Springston v. Consolidated Rail Corp.,* 863 F.Supp. 535 (N.D.Oh.1994) (BIA preempts negligence and strict product liability claims) *with Viad Corp. v.*

*Superior Court of Los Angeles County,* 55 Cal. App.4th 330, 64 Cal.Rptr.2d 136 (1997) (BIA does not preempt state common law actions against (non-carrier) railroad manufacturers) and *Oglesby v. Delaware Hudson Ry. Co.,* 964 F.Supp. 57 (N.D.N.Y.1997) (BIA does not preempt claim against seat manufacturer for failure to warn because seat warning label regarding its use is not safety device that would appear in rule issued by implementing agency).

At least two courts have recently undertaken to determine whether *Napier* remains good law, subsequently embarking on their own preemption inquiry de novo. See *Viad, supra* (suggesting that Supreme Court's recent approach to preemption calls *Napier*'s holding of field preemption into question); *Norfolk & Western Ry. Co. v. Pennsylvania Public Utility Comm'n,* 489 Pa. 109, 413 A.2d 1037 (Pa.1980) (finding that Federal Railroad Safety Act overturned *Napier*'s finding of total field preemption by BIA). Because another of plaintiffs' arguments has sufficient merit to overcome the motion for summary judgment, this court need not consider the questions raised by those cases.

the broader question of BIA preemption of state common law actions generally.

## B.

In considering whether the BIA preempts state common law claims against railroad manufacturers that are not also "railroad carriers", this court is mindful that "[i]n order to avoid an unintended encroachment on state authority, the Supreme Court has made clear that when interpreting a federal statute, courts should be reluctant to find preemption." *Health Maintenance Org. of N.J. v. Whitman*, 72 F.3d 1123, 1127 (3d Cir. 1995). Such reticence is particularly warranted where, as here, the federal law in question is directed at a subject "traditionally governed" by the states, such as health and safety. *CSX*, 507 U.S. at 664, 113 S.Ct. 1732. Keeping those landmarks in view, I turn to the question whether Congress has evidenced a "clear and manifest" purpose to preempt "in the text and structure of the statute at issue." *Id* (citation and internal quotation marks omitted).

The text of the BIA strongly suggests that Congress did not intend to insulate railroad manufacturers from liability under state common law. On its face, the BIA applies simply to "railroad carrier[s]." That phrase, or the shorter form "carrier", appears almost two dozen times in the few pages that the Act takes up in the United States Code.[4] On the other hand, the Act says nothing at all of railroad "manufacturers" such as defendant Coach & Car. Thus it appears from the text that even if Congress intended the BIA to preempt state common law claims against carriers (itself a contested point), it did not intend to preempt state common law claims against railroad manufacturers—or, at the very least, state common law claims against railroad manufacturers that are not also carriers.

The structure of the Act suggests much the same. In 49 U.S.C. § 20701–20903, the BIA sets a somewhat broader standard of railroad safety to which carriers must adhere; provides guidelines for inspections and testing by the Secretary of Transportation ["Secretary"]; requires the Secretary to inspect locomotives used by carriers and ensure that carriers make their own inspections; establishes guidelines for noncompliance with the broad railroad safety standards; mandates the issuing by carriers of inspection and repair reports; requires carriers to report accidents and orders the Secretary to investigate and report on those accidents; permits the Secretary to publish investigative reports; requires carriers to file monthly accident reports; provides the Secretary with general investigative power and the authority to publish investigative reports; and precludes the use in civil actions of investigative reports made by a carrier or the Secretary.[5] While a few scat-

---

4. See, e.g., 49 U.S.C. § 20701 (requiring a "railroad carrier" to use inspected, safe equipment that can withstand all tests prescribed by Secretary of Transportation); 49 U.S.C. § 20702 (mandating Secretary to ensure that every "railroad carrier" inspects its equipment; governing steps when "Secretary finds that a [train or train part] owned or operated by a railroad carrier" fails to comply; setting recordkeeping requirements for "railroad carrier"; governing how "A railroad carrier may change a rule or instruction of the carrier governing inspection by the carrier"); 49 U.S.C. § 20703 (governing accident reporting requirements of a "railroad carrier"); 49 U.S.C. § 20901 (governing monthly reporting requirements for a "railroad carrier"); 49 U.S.C. § 20902 (governing federal investigations of accidents occurring on lines of a "railroad carrier"). For similar text in related subparts of the United States Code, see 49 U.S.C. § 20302 (specifying vehicles that a "railroad carrier" may use); 49 U.S.C. § 20303 (requirements and liability of movement of defective vehicles by a "railroad

carrier"); 49 U.S.C. § 20304 (no assumption of risk by employees of carriers). Only a few clauses of the BIA do not mention carriers. See, e.g., 49 U.S.C. § 20305 (requiring Secretary to inspect and report on mail cars; no mention of carriers or manufacturers); 49 U.S.C. § 20306 (setting conditions for exemptions from requirements of the Act for technological improvements; no mention of carriers or manufacturers).

5. The BIA fits into the broader framework of Title 49, Subtitle V, Part A of the United States Code, which sets safety standards for rail programs. In 49 U.S.C. §§ 20301–20306, for instance, the BIA requires carriers using larger non-logging vehicles to ensure that those vehicles are equipped with certain features; permits carriers to refuse to receive on their lines improperly equipped vehicles from other carriers; governs the removal of defective and insecure vehicles on a carrier's own line or to an adjacent carrier's line, specifies the equipment that must be used in such removal, and restricts liability to

tered provisions could, in isolation, be read to refer to more than carriers, see e.g. 49 U.S.C. § 20306 (permitting Secretary to exempt railroad equipment from BIA requirements where such requirements hinder technological development), 49 U.S.C. § 20305 (requiring Secretary to inspect and report on mail cars), it is clear that the BIA as a whole establishes a regulatory framework within which carriers and the Secretary of Transportation—but not railroad manufacturers—operate. Nothing about the structure of the BIA indicates that Congress intended to bring railroad manufacturers within its regulatory web, let alone to preclude state common law actions against railroad manufacturers.

One statement in *Napier* could be read to suggest something different. The Court defined the field preempted by Congress as "the equipment of locomotives." 272 U.S. at 613, 47 S.Ct. 207.[6] One could read the Court's refusal to distinguish equipment related to railroad safety from equipment related to employee health to suggest that this court should refuse to distinguish between railroad carriers and manufacturers, that it should instead focus on whether the claim centers on locomotive equipment. But one need not read it so. Distinguishing between an intent to regulate trains in order to safeguard employee health and an intent to regulate trains in order to ensure railroad safety may be difficult, especially where the petitioning States themselves acknowledge that such regulation has subsidiary benefits in railroad safety. In that context, *Napier*'s focus on locomotive equipment, the physically tangible "subject" of the legislation, makes perfect sense, ensuring as it does that Con-

gress's preemptive intent will not be frustrated by invocations of the intangible purposes of State legislation. Such is not the case here, however. Distinguishing between railroad manufacturers and carriers does not require appeals to the purpose of legislation: in a case such as this, at least, it requires no more than identifying the defendant's line of work. Given the Supreme Court's regular admonitions to maintain a "presumption against the pre-emption of state police power regulations", *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) (citation and quotation marks omitted), I decline to stretch *Napier*'s common-sense interpretation of the BIA into one that has rather less common sense. The statute's text does not mention railroad manufacturers, its structure does not invite reading them into it, and federalism and history counsel leaving them out.

Defendant's Motion for Summary Judgment is, therefore, denied in an order accompanying this opinion.

### ORDER

AND NOW, this 29 day of September, 1998, upon consideration of Defendant Coach & Car Equipment Company's Motion for Summary Judgment, for the reasons given in the accompanying opinion, it is hereby ORDERED and DECREED that Defendant's Motion is DENIED.

---

the carrier doing the moving; denies carriers the right to use an assumption of risk defense in certain suits by employees; and gives the Secretary of Transportation some authority to change carriers' safety appliance requirements.

**6.** Elsewhere in the decision, *Napier* notes that the power delegated to the administrative agency "is a general one. It extends to the design, the construction, and the material of every part of the locomotive ...." 272 U.S. at 611, 47 S.Ct. 207. Though *Napier* thus envisions preemption of state regulations of carriers regarding the design and construction of locomotives that they use, it says nothing about the preemption of claims against railroad manufacturers. Indeed,

it is probably most fair to say that the enactors of the original statute did not consider the issue of suits against railroad manufacturers, since the common law doctrine of privity then precluded almost all suits against manufacturers. *See Viad*, 55 Cal.App.4th at 338, 64 Cal.Rptr.2d 136. Though *MacPherson v. Buick Motor Co.*, 217 N.Y. 382, 111 N.E. 1050 (1916), repudiated the privity doctrine and established a manufacturer's duty to exercise due care to those whose harm could be foreseen, neither *Napier* nor any Congress since *Napier* has spoken to the question whether state common law claims against railroad manufacturers fall inside or outside the BIA's preemptive reach.