John M. OGLESBY and Lois P. Oglesby, Plaintiffs–Appellees,

v.

DELAWARE & HUDSON RAILWAY COMPANY, Defendant,

General Motors Corporation, Defendant–Appellant.

Docket No. 97–9636.

United States Court of Appeals, Second Circuit.

Argued Feb. 9, 1999.

Decided June 17, 1999.

David Heilbron, McCutchen, Doyle, Brown & Enersen (Arthur H. Thorn, Paul D. Jureller, Thorn & Gershon, Albany, New York, of counsel), San Francisco, California, for Defendant–Appellant.

Ira M. Maurer, Elkind, Flynn & Maurer, White Plains, New York, for Plaintiffs–Appellees.

Before: WINTER, Chief Judge, VAN GRAAFEILAND, and PARKER, Circuit Judges.

PER CURIAM:

General Motors Corporation ("GM") appeals with permission from Judge Kahn's denial of its motion for summary judgment. *See Oglesby v. Delaware & Hudson Ry. Co.*, 964 F.Supp. 57 (N.D.N.Y.1997). We reverse and remand with instructions to grant the motion.

## BACKGROUND

On August 13, 1986, John Oglesby, an employee of the Delaware and Hudson Railway Company ("D & H"), suffered a back injury when he attempted to adjust the position of an engineer's (or cab) seat in a locomotive designed and constructed by GM. In order to facilitate the desired adjustment, a trainman is supposed to release the seat from its three-legged mount so that the assembly can be moved with relative ease. Assertedly unaware of the preferred procedure, Oglesby attempted to move the assembly without first releasing the seat. In the process, he wrenched his back.

Oglesby's action against D & H, brought under the Federal Employers' Liability Act, 45 U.S.C. §§ 51–60, has been settled. His surviving claim against GM is based on its alleged failure to give him instructions concerning the use of the seat.[1] Oglesby makes no claim in this court that the seat was defectively designed or manufactured. Relying on state common law, he contends that GM should have placed a warning or instructional label on the seat informing employees of the easier adjustment procedure.

GM moved for summary judgment on the ground that Oglesby's alleged common-law tort claim was preempted by the

1. Although Oglesby's wife is a party to this action, her claim is a derivative one, and it will be deemed included where pertinent under the term "Oglesby."

2. Because we find that this claim is preempted by the BIA, we need not reach the issue of whether the FRSA preempts this action as well.

3. The BIA reads, in relevant part, as follows:

Locomotive Boiler and Inspection Act ("BIA"), 49 U.S.C. §§ 20701–20903, and/or the Federal Railroad Safety Act of 1970 ("FRSA"), 45 U.S.C. §§ 421 *et seq.* (repealed in 1994 and reinstated in substance in 49 U.S.C. §§ 20101 *et seq.*). The district court denied GM's motion, but, pursuant to 28 U.S.C. § 1292(b), it certified this question for an immediate appeal, which we agreed to hear.

## DISCUSSION

■ In our *de novo* review of the district court's denial of GM's summary judgment motion, we must determine whether a manufacturer's failure to warn or instruct falls within the parameters of the BIA because, if it does, this claim is preempted. We, therefore, first examine whether a failure to warn or instruct falls within the scope of the statute. Because we find that it does, we then address Oglesby's contentions that the BIA does not apply to manufacturers or to common law causes of action. Because we hold that the BIA does apply in both situations, we reverse with instructions to grant GM's motion for summary judgment.[2]

### A. *The Scope of the BIA*

Congress first enacted the BIA in 1911.[3] Through this and other acts, it conferred on the Interstate Commerce Commission (and now the Department of Transportation) full authority over virtually all aspects of locomotive safety to the exclusion of the states.

■ In *Napier v. Atlantic Coast Line R. Co.*, 272 U.S. 605, 47 S.Ct. 207, 71 L.Ed. 432 (1926), the Supreme Court held that

> A railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appurtenances—
> (1) are in proper condition and safe to operate without unnecessary danger of personal injury....
>
> 49 U.S.C. § 20701.

Congress, through the BIA, clearly intended the federal government to occupy the field of locomotive safety. *See id.* at 613, 47 S.Ct. 207. States must therefore "leave all regulatory activity in that area to the federal government," and any state law that attempts to regulate within the domain is preempted. *Michigan Canners and Freezers Ass'n v. Agricultural Marketing and Bargaining Bd.*, 467 U.S. 461, 469, 104 S.Ct. 2518, 81 L.Ed.2d 399 (1984); *cf. Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 248, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984); *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947).

The *Napier* Court also addressed the breadth of the federal government's authority under the BIA: "[the authority] extends to the design, the construction, and the material of every part of the locomotive and tender and of all appurtenances." *Napier*, 272 U.S. at 611, 47 S.Ct. 207. A decade later, the Supreme Court again expounded upon the extent of the statute, stating that the BIA encompasses "[w]hatever in fact is an integral or essential part of a completed locomotive, and all parts or attachments definitely prescribed by lawful order to the [Secretary.]" *Southern Ry. Co. v. Lunsford*, 297 U.S. 398, 402, 56 S.Ct. 504, 80 L.Ed. 740 (1936).

Appellees contend that GM's alleged failure to provide an instructional label on its cab seat does not fall within these broad parameters and hence is not preempted. This argument begins from an incorrect premise: the relevant inquiry is not whether a label falls under the BIA but whether a cab seat does. That such a seat is within the scope of the BIA is obvious. Indeed, the Secretary of Transportation has issued a regulation dealing with cab seats. *See* 49 C.F.R. § 229.119(a).

■ Oglesby nonetheless attempts to draw a dichotomy between safety devices and instructional labels and contends, in essence, that state regulations requiring the latter are not preempted. In short,

because Oglesby's suit demanded "a label instructing an individual on the proper use of the ... cab seat," *Oglesby*, 964 F.Supp. at 63, the BIA does not apply. However, this is a distinction without a difference: the very purpose of such instructions would be to protect Oglesby's safety. Moreover, if we adopted such a distinction, states could promulgate otherwise preempted safety regulations in the guise of instructional labels and then create causes of action for injured workers if railroads failed to post them. Such a result would undermine the goal of the BIA, which is to prevent "the paralyzing effect on railroads from prescription by each state of the safety devices obligatory on locomotives that would pass through many of them." *Swift & Co. v. Wickham*, 230 F.Supp. 398, 407–08 (S.D.N.Y.1964) (three-judge court) (Friendly, J.).

■ Appellees further contend that "a warning regarding the specific cab seat made by a specific manufacturer would never appear in a rule regarding cab seats by the Secretary [of Transportation]," *Oglesby*, 964 F.Supp. at 63, but this contention—even if accurate—does not negate preemption by the BIA. *Napier* states in no uncertain terms that the relevant question is not whether the federal government has exercised its authority but whether it possesses the power in the first place. *See Napier*, 272 U.S. at 613, 47 S.Ct. 207 ("The fact that the Commission has not seen fit to exercise its authority to the full extent conferred, has no bearing upon the construction of the act delegating the power."). No claim is made that the Secretary of Transportation could not issue a manufacturer-specific rule pursuant to the BIA. Indeed, the argument fails to recognize that the Department of Transportation has issued manufacturer-specific regulations in other contexts. *See, e.g.,* Airworthiness Directives; Boeing Model 737–100, –200, –300, –400, and –500 Series Airplanes, 62 Fed.Reg. 60810 (Federal Aviation Admin., Dep't of Transp.1997) (to be codified at 14 C.F.R. pt. 39) (proposed Nov. 13, 1997);

General Motors Corporation; Grant of Application for Decision of Inconsequential Noncompliance, 62 Fed.Reg. 15969–01 (Dep't of Transp.1997). Moreover, the federal government could certainly promulgate a rule requiring each manufacturer to attach a label explaining how to adjust its cab seat. *See Law v. General Motors Corp.,* 114 F.3d 908, 911 (9th Cir. 1997) (stating that Transportation Secretary has frequently required attachment of warning labels under BIA). Appellees have not, therefore, provided a compelling argument that a label regarding use of a cab seat is outside the parameters of the BIA.

The label that Oglesby claims is required falls squarely within the field of employment hazards that the BIA was intended to cover. Nothing in the FRSA (or any other statute) modifies this conclusion. *See Springston v. Consolidated Rail Corp.,* 130 F.3d 241, 245 (6th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1560, 140 L.Ed.2d 792 (1998); *Marshall v. Burlington N., Inc.,* 720 F.2d 1149, 1153 (9th Cir.1983).

B. *Does the BIA Apply to Manufacturers and Does It Preempt Common Law Causes of Action?*

Oglesby makes two additional arguments as to why the BIA does not apply in the instant case: (i) the BIA applies only to railroad carriers and not to manufacturers of component parts and (ii) the BIA preempts only state statutes and not common law claims. We disagree.

■ Although the word "manufacturer" does not appear in the BIA, the scope of the Act includes both the "design" and "construction" of a locomotive's parts. *Napier,* 272 U.S. at 611, 47 S.Ct. 207. Two other circuits have addressed the issue of whether the BIA includes manufacturers, and we agree with their conclusion that it does. *See Springston,* 130 F.3d· at 244; *Law,* 114 F.3d at 911–12. *But see Lorincie v. Southeastern Penn. Transp. Auth.,* 34 F.Supp.2d 929 (E.D.Pa.1998) (holding that BIA does not apply to manu-

facturers). Where, as here, the design and construction of a part are in the hands of a manufacturer, the results that Congress had hoped to obtain through the BIA would be accomplished best by including the manufacturer within the statute's coverage.

■ Oglesby's contention that the BIA serves only to preempt state statutory enactments but not common law remedies is equally unavailing. In reaching this conclusion, we again agree with the two other circuits that have addressed this issue. *See Springston,* 130 F.3d at 244–45 (BIA bars claims for common-law negligence for failure to install devices beyond those required by federal law); *Marshall,* 720 F.2d at 1152 (same). This holding is necessary to keep the locus of regulation at the federal level and maintain the uniformity that is a goal of the BIA. As the Supreme Court has noted, an award of damages can act as a "potent method of governing conduct and controlling policy." *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 247, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). For a locomotive carrier or manufacturer, the source of the damages, whether statutory or common law, is irrelevant, and both must therefore be preempted by the BIA. *Cf. Gilbert v. Burlington Indus.,* 765 F.2d 320, 327–28 (2d Cir.1985), *aff'd,* 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 558 (1986) (recognizing that ERISA, which occupies the field of employee benefit plans, *see Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981), preempts state claims whether raised under state statutes or at common law).

In sum, we hold that Oglesby's common law action against GM has been preempted by the BIA, and GM's motion for summary judgment should have been granted. We therefore reverse the decision of the district court and remand with instructions to grant the motion.