114 F.3d 908
 Prod.Liab.Rep. (CCH) P 14,970, 97 Cal. Daily Op.
Serv. 4239,
97 Daily Journal D.A.R. 7115
Larry LAW; Del Mar McCutchen; Michael Barnes; Joseph
Bowman; Albert Thompson; Andrew Curtis; Alan
Fenton; Dennis Ross, Plaintiffs-Appellants,
v.
GENERAL MOTORS CORPORATION; General Electric, Defendants-Appellees.
 No. 95-16391.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 5, 1996.
Decided June 5, 1997.
 
 Paul F. Bennett, Gold, Bennett & Cera, San Francisco, California, for plaintiffs-appellants.
 David M. Heilbron, Christopher B. Hockett, McCutchen, Doyle, Brown & Enersen; Frederick D. Baker, Sedgwick, Detert, Moran & Arnold, San Francisco, California, for defendants-appellees.
 Appeal from the United States District Court for the Northern District of California; Saundra B. Armstrong, District Judge, Presiding. D.C. No. CV-94-03585-SBA.
 Before: NORRIS, KOZINSKI and TASHIMA, Circuit Judges.
 OPINION
 KOZINSKI, Circuit Judge.
 
 
 1
 We decide whether the Boiler Inspection Act (BIA), 49 U.S.C. §§ 20701-20903, preempts state common-law remedies against railroad manufacturers for injuries arising out of alleged design defects in their trains.
 
 
 2
 * Appellants are eight railroad workers who claim that their hearing was severely damaged by excessive noise. In addition to the usual bells and whistles, appellants were exposed to bursts of sound, often exceeding 120 decibels, from locomotive brakes and engines. They claim that defendants--the industry leaders in locomotive manufacturing--defectively designed these components, failed to properly insulate their work-stations and failed to warn them of any risk to their hearing. Appellants make various state-law claims, including strict liability in tort, negligence, failure to warn, breach of implied warranty, and intentional and negligent infliction of emotional distress.
 
 
 3
 The district court granted defendants' motion to dismiss, concluding that these claims were preempted by the BIA. Appellants contend the district court erred on two scores: first, that the BIA only preempts direct state regulation of railroad safety, not common-law tort liability; and second, that the BIA only preempts suits against railroad operators, not manufacturers.
 
 II
 
 4
 The Supremacy Clause empowers Congress to supplant decentralized, state-by-state regulation with uniform national rules. See U.S. Const. art. VI, cl. 2. Given the importance of federalism in our constitutional structure, however, we entertain a strong presumption that federal statutes do not preempt state laws; particularly those laws directed at subjects--like health and safety--"traditionally governed" by the states. CSX Transp., Inc. v. Easterwood, 507 U.S. 658, 664, 113 S.Ct. 1732, 1737, 123 L.Ed.2d 387 (1993). "Thus, pre-emption will not lie unless it is 'the clear and manifest purpose of Congress.' " Id. (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)).
 
 
 5
 The first stone we turn in evaluating Congress's intent to preempt state laws regulating the safety of railroad equipment is the language of the statute:
 
 
 6
 A railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appurtenances--
 
 
 7
 (1) are in proper condition and safe to operate without unnecessary danger of personal injury;
 
 
 8
 (2) have been inspected as required under this chapter and regulations prescribed by the Secretary of Transportation under this chapter; and
 
 
 9
 (3) can withstand every test prescribed by the Secretary under this chapter.
 
 
 10
 49 U.S.C. § 20701. Although the BIA says nothing about its preemptive effect, state laws touching upon the safety of locomotive "parts and appurtenances" are nevertheless preempted if they fall within a field "Congress intended the Federal Government to occupy exclusively." English v. General Elec. Co., 496 U.S. 72, 79, 110 S.Ct. 2270, 2275, 110 L.Ed.2d 65 (1990).
 
 
 11
 It has long been settled that Congress intended federal law to occupy the field of locomotive equipment and safety, particularly as it relates to injuries suffered by railroad workers in the course of their employment. Congress passed the first iteration of the BIA in 1911, see Feb. 17, 1911, ch. 103, 36 stat. 913, § 2, and by 1926 the Supreme Court had announced its broad preemptive reach. In Napier v. Atlantic Coast Line R.R., 272 U.S. 605, 47 S.Ct. 207, 71 L.Ed. 432 (1926), the Court considered a preemption challenge to a Georgia law that required all trains operating in the state to have an automatic fire door and a cab curtain. The Court invalidated these regulations, holding that the BIA preempts every state law that would manipulate "the design, the construction and the material of every part of the locomotive and tender and of all appurtenances." Id. at 611, 47 S.Ct. at 209.
 
 
 12
 This broad preemptive sweep is necessary to maintain uniformity of railroad operating standards across state lines. Locomotives are designed to travel long distances, with most railroad routes wending through interstate commerce. The virtue of uniform national regulation "is self-evident: locomotive companies need only concern themselves with one set of equipment regulations and need not be prepared to remove or add equipment as they travel from state to state." Southern Pac. Transp. Co. v. Oregon PUC, 9 F.3d 807, 811 (9th Cir.1993); see also R.J. Corman R.R. v. Palmore, 999 F.2d 149, 152 (6th Cir.1993) ("Th[e] lasting history of pervasive and uniquely-tailored congressional action indicates Congress's general intent that railroads should be regulated primarily on a national level through an integrated network of federal law."). Any state law that undermines this regime is preempted by the BIA.
 
 
 13
 Appellants' common-law claims fall squarely within this preempted field. Apart from compensating victims of accidents for their injuries, the purpose of tort liability is to induce defendants to conform their conduct to a standard of care established by the state. See San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 247, 79 S.Ct. 773, 780-81, 3 L.Ed.2d 775 (1959) ("The obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy."). A railroad equipment manufacturer found to have negligently designed a braking system, for example, is expected to modify that system to reduce the risk of injury. If the manufacturer fails to mend its ways, its negligence may be adjudged willful in the next case, prompting a substantial punitive damages award. If each state were to adopt different liability-triggering standards, manufacturers would have to sell locomotives and cars whose equipment could be changed as they crossed state lines, or adhere to the standard set by the most stringent state. Either way, Congress's goal of uniform, federal railroad regulation would be undermined. See id. ("Even the States' salutary effort to redress private wrongs or grant compensation for past harm cannot be exerted to regulate activities that are potentially subject to the exclusive federal regulatory scheme.").
 
 
 14
 Marshall v. Burlington Northern, Inc., 720 F.2d 1149 (9th Cir.1983), confirms our conclusion. In Marshall, the widow of a motorist killed in a collision with a train brought a wrongful death action against the railroad, alleging that the locomotive's lights inadequately warned of its approach. At the time of the accident, the train's warning systems were in full compliance with BIA standards. We reversed the jury's negligence verdict, holding that "the state may not impose liability for failure to install a part or attachment of a locomotive if it is 'within the scope of the authority delegated to the [Secretary]' to prescribe the same part or attachment." Id. at 1152 (quoting Napier, 272 U.S. at 611, 47 S.Ct. at 209).
 
 
 15
 There is no doubt that the Secretary of Transportation has authority to regulate the design of the parts appellants claim are defective. The Secretary has promulgated highly detailed regulations establishing maximum levels of locomotive cab noise, see 49 C.F.R. § 229.121; sound-levels and placement requirements for bells and whistles, see id. § 229.129; and design requirements for locomotive brakes, engines and body structures. See id. §§ 229.46, 229.101 & 229.141. Appellants nevertheless argue that locomotive manufacturers could escape liability without deviating from federal standards by requiring workers to wear protective headgear or posting warnings. But each of these remedies implicates the BIA as well. The Federal Railroad Administration, in consultation with the Occupational Safety and Health Administration, has exclusive authority to determine whether locomotive operators may wear protective headgear; a decision wisely reserved to an expert federal agency qualified to weigh the value of safety equipment against "the alertness of employees to rail transportation hazards affecting the employees, passengers and the general public along the right-of-way." 43 Fed.Reg. 10583, 10588 (1978). As for warning requirements, these too are within the scope of the Secretary's authority--an authority which the Secretary has often invoked. See, e.g., 49 C.F.R. §§ 210.27(d)(3) (labeling requirement for wayside noise levels); 215.9(a)(3) (warning posted on defective freight cars); 229.85 (warning notices for high voltage equipment); 229.113 (warning notices for steam generators). Marshall dictates that these claims must give way to federal standards. 720 F.2d at 1152.[1]
 
 III
 
 16
 Appellants nevertheless argue that their claims are not preempted because they are directed against railroad equipment manufacturers, not operators. This distinction--founded on the fact that the BIA speaks only to "railroad carrier[s]" and not manufacturers, see 49 U.S.C. § 20701--is without significance. The BIA preempts any state action that would affect "the design, the construction, and the material" of locomotives. Napier, 272 U.S. at 611. Imposing tort liability on railroad equipment manufacturers would do just that, by forcing them to conform to design and construction standards imposed by the states. This would transfer the regulatory locus from the Secretary of Transportation to the state courts--a result the BIA was clearly intended to foreclose.[2] See Taylor AG Indus. v. Pure-Gro, 54 F.3d 555, 561 n. 3 (9th Cir.1995) (preemption analysis "focuses not on whom the legal duty is imposed, but on whether the legal duty constitutes a state law requirement" already covered by federal law).
 
 
 17
 Appellants respond that if locomotive manufacturers are not subject to common-law liability for design defects, railroad workers will be without a remedy for their injuries. This is not true; indeed it serves to highlight why appellants' claims are preempted. The Federal Employers' Liability Act, 45 U.S.C. § 51 et seq., allows railroad workers to recover against their employers for all occupational injuries, including hearing loss caused by locomotive noise. E.g. Robertson v. Burlington Northern R.R., 32 F.3d 408 (9th Cir.1994). Appellants have, in fact, filed FELA claims against their employers for the same injuries alleged here. This remedy is strong medicine. FELA authorizes recovery of compensatory damages--including pain and suffering--when the employer's "negligence played any part, even the slightest, in producing the injury." Rogers v. Missouri Pac. R.R., 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1957). Proof of a BIA violation is enough to establish negligence as a matter of law, see Urie v. Thompson, 337 U.S. 163, 189, 69 S.Ct. 1018, 1034, 93 L.Ed. 1282 (1949), and neither contributory negligence nor assumption of risk can be raised as a defense. See 45 U.S.C. §§ 53-54.
 
 
 18
 Thus, the federal government has established a comprehensive mechanism for vindicating the rights of railroad workers--a mechanism that doesn't undermine the BIA's goal of uniformity. Appellants contend that this remedy is inadequate because FELA does not allow recovery of punitive damages. We have consistently held, however, that the unavailability of punitive damages under FELA does not permit the states to supplement what was designed to be an "exclusive remedy." Wildman v. Burlington Northern R.R., 825 F.2d 1392, 1395 (9th Cir.1987); see also Counts v. Burlington Northern R.R., 896 F.2d 424, 426 (9th Cir.1990). Nor are we in a position to second guess Congress's decision to disallow punitive damages, although we hasten to add that this sort of trade-off--greater certainty of recovery in exchange for limits on damages--is made in almost every worker's compensation scheme.
 
 
 19
 Appellants also claim that FELA remedies are inadequate because they can only be asserted against railroad operators, not manufacturers, and will therefore do nothing to deter manufacturers from designing substandard railroad equipment. This ignores the realities of the business world, and underestimates the market's ability to encourage manufacturers to produce safe products. Because railroad operators are liable for any injuries suffered by their employees, they would not buy locomotives, cars and other equipment that fall short of BIA standards. Doing so would not only risk FELA damage awards, but would subject railroad operators to fines of up to $20,000 per day for every violation. See 49 U.S.C. § 21302. Every railroad operator includes these potential penalties and liability costs in the bottom-line price when deciding whether to purchase from a particular manufacturer. Because locomotives that don't comply with the BIA are not, in the end, cheaper than ones that do, there is no market for them. Locomotive manufacturers already have every incentive to comply with federal standards.[3]* * *
 
 
 20
 Through the BIA, the federal government has established a comprehensive, national regime of locomotive regulation.[4] This regime--enforced by FELA and the threat of heavy civil penalties--preempts every state effort to establish independent standards for the design, construction and material of locomotives. Because this field is broad enough to encompass appellants' design defect claims against railroad equipment manufacturers, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Likewise, in Gee v. Southwest Airlines, 110 F.3d 1400 (9th Cir.1997), we stated that "we cannot construe [a] preemption provision in a way that eviscerates complementary regulations." Id. at 1407. Gee held that passenger claims against an airline for injuries arising out of aircraft "operations and maintenance" were not preempted by Section 105 of the Airline Deregulation Act, 49 U.S.C. § 41713(b)(1), in part because the Secretary of Transportation had recently promulgated a regulation requiring airlines to obtain insurance to cover such injuries. This strongly suggested that Congress and the Secretary intended airlines to be subject to common-law liability for injuries caused by operation and maintenance problems. Id. at 1406-07. Our case is the flip-side of the Gee coin. Here, the Secretary has adopted regulations designed to preclude states from imposing liability for injuries caused by defectively designed locomotive "parts and appurtenances."
 
 
 [2]
 We deal here only with state claims alleging that manufacturers defectively designed a locomotive or its parts. We do not reach the question of whether claims for manufacturing defects are likewise preempted by the BIA
 
 
 [3]
 Appellants contend that in addition to any requirements imposed by the BIA, locomotive manufacturers owe them an ordinary duty of care that can be enforced through state tort law. This argument is founded on our statement in Marshall that "railroads have an ordinary duty of care to maintain properly all devices actually attached to a locomotive. This duty is in addition to the absolute liability established by the Boiler Inspection Act for failure to maintain 'parts and appurtenances.' " 720 F.2d at 1152. But this duty of care, whatever its exact contours, only runs from "railroads" to their employees, not from railroad manufacturers. Manufacturers are not in a position to "maintain properly" any railroad parts, because once they sell the train, it's out of their hands
 
 
 [4]
 Defendants suggest that if appellants' claims are not preempted by the BIA, they are nevertheless preempted by the Federal Railroad Safety Act (FRSA), 49 U.S.C. § 20106. Because appellants' claims are preempted by the BIA, and because the FRSA has no effect on the BIA's preemptive scope, see Marshall, 720 F.2d at 1153, we need not address this issue