**Carl Amos KECK, Appellant,**

v.

**COMMONWEALTH of Kentucky, By and Through John H. GOLDEN, Bell County Attorney; A.B. Chandler III, Attorney General; and City of Middlesborough,[1] Kentucky, Appellees.**

No. 1998–CA–000318–DG.

Court of Appeals of Kentucky.

March 19, 1999.

Discretionary Review Denied by Supreme Court Sept. 15, 1999.

---

1. The inconsistent spelling of "Middlesboro" in this Opinion follows the inconsistent usage by the parties.

Bill Hayes, Eric Hayes, Middlesboro, KY, for Appellant.

Robert V. Costanzo, Middlesboro City Attorney, Middlesboro, KY , John Golden, Bell County Attorney, Pineville, KY, for Appellees.

Before GARDNER, HUDDLESTON, and JOHNSON, Judges.

## OPINION

JOHNSON, Judge.

Carl A. Keck (Keck) has appealed from the judgment of the Bell Circuit Court entered on January 13, 1998, which reversed the determination of the Bell District Court that the ordinance Keck was charged with violating was unconstitutional. We reverse.

On March 31, 1997, the City of Middlesboro passed Ordinance 91.10, entitled "An Ordinance Providing for Abatement of Nuisances and Noise Control in City of Middlesborough, Ky." (hereinafter, the "noise control ordinance"), which reads in pertinent part as follows:

It shall be unlawful for any person, firm, or corporation to create or assist in creating any unreasonable loud and disturbing noise in the city. Noise of such character, intensity, and duration as to be detrimental to the public health, welfare, and peace is prohibited.

The following acts, among others, are declared to be loud and disturbing noises in violation of this section, but this enumeration shall not be deemed to be exclusive:

. . . .

(4) The use of any automobile, motorcycle, trucks of any size, or any vehicle so out of repair, so loaded, or in a manner as to create loud grating, grinding, rattling, or other noise, particularly through residential areas during daylight hours, and most particularly throughout the nighttime hours.

No vehicle used for commercial hauling shall operate between the hours of dusk to daylight if noise so generated by such vehicles shall be operated in a section zoned residential if such operation creates noise or pollution that disturbs the quiet, peace and repose of the neighborhoods.

On April 7, 1997, at 5:04 a.m., Keck, a truck driver who was proceeding to his terminal located in Arthur, Tennessee, was issued a citation by an officer of the Middlesboro Police Department for violating the noise control ordinance. Keck was driving a truck loaded with coal on Kentucky Route 74, within the city limits of Middlesboro. There is no dispute that while Route 74 goes through a residential section of Middlesboro, it is, and has been for many years, designated as a "truck route." [2]

Keck moved to dismiss the action against him and alleged that enforcement of the noise control ordinance was preempted by various federal statutes and by the Commerce Clause of the United States Constitution, Article 1, § 8. Keck further argued that the noise control ordinance offended the void-for-vagueness doctrine. The Bell District Court Judge, the Hon. James L. Bowling, Jr., recused himself and the matter was assigned to a special judge.[3] In their joint brief, the Commonwealth of Kentucky and the City

---

2. The record does not disclose what governmental entity made this designation, but we assume it was made by the Transportation Cabinet, Department of Highways.

3. In his order, Judge Bowling explained his reason for recusal as follows:

The Court has been advised that a ruling adverse to the Commonwealth/City of Middlesboro could, among other possibilities, result in the truck route being relocated to the road known as the Beltline. The Court maintains his personal residence near this road and travels the road numerous times a day and would not be in favor of relocating the truck route on to the Beltline.

of Middlesboro (the appellees), relied upon *New Hampshire Motor Transport Association v. Town of Plaistow*, 67 F.3d 326 (1 st Cir.1995) (*cert. denied*, 517 U.S. 1120, 116 S.Ct. 1352, 134 L.Ed.2d 521 (1996)), in making their argument that the noise control ordinance did not offend any federal statutes or the Commerce Clause.

On November 5, 1997, the district court dismissed the charge against Keck. In a short opinion that did not contain any legal authority, the district court determined that the noise control ordinance was unconstitutional, and thereby, unenforceable as follows:

[T]he question presented, reduced to its simplest form, is whether the City of Middlesboro can restrict by ordinance what would otherwise be the lawful use of the streets and roads within its jurisdiction by trucks which are not violating any existing state or federal statute or regulation. It is an attempt to limit the noise and disturbance caused by said trucks during the hours when people are enjoying the peace and serenity of their home environment. While this is an admirable goal, and much to be wished for by those of us[ ] who live in earshot of busy highways, it is not permissable [sic] unless tied to a clearly identifiable risk to public health or safety. The prosecution has attempted to make the fumes and emissions of these trucks a health issue to which the city can tie its ordinance, but federal courts have not extended this argument to such issues. This Court is not insensative [sic] to the problem the City is attempting to address. In my home jurisdiction the trucks carry logs instead of coal but are just as noisy in and around town. However, an ordinance restricting their travel during certain hours would not be constitutional here and is not in Middlesboro.

The Court finds that the ordinance under which [Keck] is charged is uncon-

stitutional as the City of Middlesboro can not [sic] place such a restriction on commerce or otherwise forbid the lawful operation of any motorvehicle [sic] on public roads absent a showing of an articuable [sic] risk to the health and safety of its citizens which has not been shown here.

The appellees appealed to the Bell Circuit Court. In its opinion, which also did not contain any legal authority, the Bell Circuit Court reversed and set aside the judgment of the Bell District Court. The circuit court determined that "the overall purpose of the ordinance when considered as a whole clearly intended to address a problem of public safety." The circuit court, in finding no constitutional impediment to the enforcement of the ordinance, further reasoned as follows:

Such noise of the type and character, and intensity as referred to in the ordinance is clearly a condition that affects the public health, public comfort and welfare, the peaceful use of the property of the public. There is hardly an aggravation of a person's senses as sharp as noise created by the type of vehicular traffic referred to in the ordinance.

The ordinance seeks to control such activities during the time that the great majority of citizens are trying to rest and sleep.

The Court finds there's no vagueness about what the ordinance seeks to do, that is to control the traffic of this type and nature.

A city ordinance of the size of Middlesboro, Kentucky designed to protect public health and safety of all of its citizens, against all violators is clearly not preempted by Federal Law.

On April 15, 1998, this Court granted Keck's motion for discretionary review specifically for the purpose of reviewing the issues of the constitutionality of the ordinance and the doctrine of preemption.[4]

4. The doctrine of federal preemption is derived from the Supremacy Clause of the

United States Constitution, Article VI. "Congressional intent is the touchstone of all pre-

Because we agree with the determination reached by the Bell District Court, we reverse the decision of the Bell Circuit Court.

■ Keck first argues that the noise control ordinance is preempted by the Surface Transportation Assistance Act of 1982 (STAA), 49 U.S.C. § 31111, *et seq.* This statute was originally enacted by Congress "[i]n order to eliminate problems caused by inconsistent state regulation of highway use." *A.B.F. Freight System, Inc. v. Suthard,* 681 F.Supp. 334, 337 (E.D.Va.1988). *See also New York State Motor Truck Association, Inc. v. City of New York,* 654 F.Supp. 1521, 1524 (S.D.N.Y.1987), (STAA enacted "in response to congressional concern over conflicting state laws regarding the use of the national highway system by some commercial trucks"). The STAA contains two express preemption provisions—one preempting state limitation on the size of vehicles that can use the interstate system and the other which prohibits the states from imposing restrictions on those vehicles in obtaining "reasonable access" to the federal network of highways. It is the second preemption provision, as amended by the Tandem Truck Safety Act of 1984 (TTSA), that is applicable in this case. This provision reads as follows:

(a) Prohibition on denying access. A State may not enact or enforce a law denying to a commercial motor vehicle subject to this subchapter or subchapter I of this chapter reasonable access between—

(1) the Dwight D. Eisenhower System of Interstate and Defense Highways ... and other qualifying Federal-aid Primary System highways designated by the Secretary of Transportation; and

(2) terminals, facilities for food, fuel, repairs, and rest, and points of loading and unloading for household goods carriers, motor carriers of passengers, or any truck tractor-semitrailer combination in which the semitrailer has a length of not more than 28.5 feet and that generally operates as part of a vehicle combination described in section 31111(c) of this title.

(b) Exception. This section does not prevent a State or local government from imposing reasonable restrictions, based on safety considerations, on a truck tractor-semitrailer combination in which the semitrailer has a length of not more than 28.5 feet and that generally operates as part of a vehicle combination described in section 31111(c) of this title.

49 U.S.C. § 31114.

The proper analysis, as we see it, is whether or not the noise control ordinance, which essentially prohibits heavy commercial vehicles from operating in an area zoned residential during hours of darkness, conflicts with or violates the "reasonable access" requirement of the STAA. Although the Bell Circuit Court determined that the purpose of the ordinance was "to address a problem of public safety," the appellees have not pointed to a single safety objective for the enactment of the ordinance. Indeed, it is readily apparent from the title, as well as its textual provisions, that the ordinance is concerned with eliminating the noise made by trucks and the disturbance and/or aggravation experienced by citizens who live near the truck route. These are concerns that relate to "public health" not to "public safety." Clearly, these are not proper considerations for restricting access. The STAA contemplates that any attempt to restrict access to those engaged in interstate commerce must be predicated on safety concerns.

[T]hese two pieces of legislative history [STAA and TTSA], taken together with the language of the Act itself, indicate that Congress forbade states from denying *reasonable* access, but left it up to the states themselves to determine what

emption analysis." *Niehoff v. Surgidev Corporation,* Ky., 950 S.W.2d 816, 827 (1997)

(Ison, Special Justice, dissenting).

is reasonable. Congress evidently intended that states be allowed to exercise their police powers to safeguard the safety of the public by denying as *unreasonable* access routes to and from the national network that cannot be safely traversed by STAA vehicles. The states' power to deny access is tempered, however, by the caveats that *reasonable* access *must* be available, and that states may only exercise their police powers reasonably and in the interest of public safety. Essentially, Congress has authorized a sliding scale test for the availability of an access route: the greater the risk to the safety of the public posed by the use of a route by an STAA vehicle, the more leeway the state has to deny or even temporarily deny the use of that route pursuant to the reasonable exercise of its police powers. *Consolidated Freightways Corporation of Delaware v. Larson,* 647 F.Supp. 1479, 1484 (M.D.Pa.1986)(emphases in original). *See also A.B.F. Freight System, supra,* 681 F.Supp. at 342 ("restrictions must be based only on safety considerations and not on such other, inappropriate factors as traffic convenience, road damage and costs or road maintenance"); and *New York State Motor Truck Association, supra,* 654 F.Supp. at 1539, ("States may not impose unreasonable restrictions pursuant to § 412(b) [now 49 U.S.C. § 31114], nor may they impose restrictions that are not based on safety considerations").

The appellees insist that similar ordinances have been upheld against claims of preemption. However, other than *New Hampshire Motor Transport Assoc. v. Town of Plaistow,* 67 F.3d 326 (1st Cir. 1995), our research did not bear out this assertion. In *Plaistow,* the town prohibited heavy commercial trucking traffic from going to and from a terminal during late night hours. The town ordinance stated that the restrictions were imposed because of the "odors, smoke, fumes, noise and

vibration" resulting from the traffic. 67 F.3d at 328. In upholding the ordinance, the Court took the unique stance that "reasonable access" did not necessarily "turn solely on safety considerations." 67 F.3d at 330. The Court rejected the interpretation of the "reasonable access" provision of the STAA discussed in the three district court cases cited above, reasoning that the restrictions in those cases were "different from and far more intrusive than the Plaistow ordinance[.]" *Id.* at 331.

In addition to its departure from the other authorities which considered the issue of what constitutes "reasonable access" contemplated by the STAA, we are persuaded that there are factual distinctions which make the decision reached in *Plaistow* inapplicable to the case before us. Significantly, the ordinance in *Plaistow* affected one terminal, whereas the ordinance in this case affects all truck traffic through Middlesboro. The road leading to that terminal in Plaistow was not a state highway, nor was it designated as a truck route.[5] Further, the ordinance named a variety of reasons for prohibiting traffic during certain hours, not just noise.

The opinion of the Bell Circuit Court that the ordinance was intended to address issues of "public safety" is conclusory and not supported by the record. The appellees have made no allegation, nor presented any evidence, establishing any risk to the public by the use of the truck route by Keck, or others similarly situated, between the hours of dusk to daylight. Accordingly, it is this Court's opinion that the nighttime curfew provisions of the ordinance conflict with the STAA and the TTSA and are unenforceable.

■ Next, Keck argues that the ordinance is preempted by the Noise Control Act of 1972(NCA), 42 U.S.C. § 4901. In passing the NCA, Congress found as follows:

---

5. In order to get to the terminal in Plaistow, trucks were required to leave the state highway and travel 2000 feet along a city residential street. *Id.* at 327.

(3) that, while primary responsibility for control of noise rests with State and local governments, Federal action is essential to deal with major noise sources in commerce control of which require national uniformity of treatment.

42 U.S.C. § 4901(3). Like the STAA and TTSA, the NCA contains an explicit preemption provision, as follows:

(1) [A]fter the effective date of a regulation under this section applicable to noise emissions resulting from the operation of any motor carrier engaged in interstate commerce, no State or political subdivision thereof may adopt or enforce any standard applicable to the same operation of such motor carrier, unless such standard is identical to a standard applicable to noise emissions resulting from such operation prescribed by any regulation under this section.

(2) Nothing in this section shall diminish or enhance the rights of any State or political subdivision thereof to establish and enforce standards or controls on levels of environmental noise, or to control, license, regulate, or restrict the use, operation, or movement of any product if the Administrator, after consultation with the Secretary of Transportation, determines that such standard, control, license, regulation, or restriction is necessitated by special local conditions and is not in conflict with regulations promulgated under this section.

42 U.S.C. § 4917(c). There is no evidence that Keck was operating his truck in violation of the standards established pursuant to the NCA. The ordinance makes it illegal to operate a "vehicle used for commercial hauling ... between the hours of dusk to daylight ... in a section zoned residential" if the noise "disturbs the quiet, peace and repose of the neighborhoods." Clearly, the standard articulated by the ordinance is not tied to the decibel levels established for noise emissions by the NCA and the regulations promulgated thereunder, and for this reason also, the ordinance is not enforceable.

Having determined that the noise control ordinance conflicts with the STAA, TTSA and NCA, it is unnecessary to address Keck's remaining arguments concerning the Commerce Clause, and the ordinance's alleged vagueness. Accordingly, the judgment of the Bell Circuit Court is reversed.

ALL CONCUR.