**AT & T COMMUNICATIONS, INC. and AT & T COMMUNICATIONS OF THE PACIFIC NORTHWEST, INC., Plaintiffs,**

v.

**Ron EACHUS, Chairman, Roger Hamilton, Commissioner, and Joan H. Smith, Commissioner, in their Official Capacities as Commissioners of the Public Utility Commission of Oregon; and Oregon Public Utilities Commission, Defendants.**

No. 00–6397–HO.

United States District Court, D. Oregon.

Oct. 18, 2001.

John F. McGrory, Davis, Wright & Tremaine, Portland, OR, for Plaintiff.

### ORDER

HOGAN, District Judge.

AT & T brings this action for declaratory and injunctive relief seeking to declare unlawful and stop enforcement of OPUC Order No. 00–312. Defendants are the

commissioners of the Public Utility Commission of Oregon (Commission). Both parties move for summary judgment.

## Background

The Commission oversees and regulates the provision of telecommunications services in Oregon. The legislative policy underlying telecommunications regulation is to secure and maintain high-quality universal telecommunications service at just and reasonable rates for all classes of customers. ORS § 759.015.

On June 16, 2000, the Commission issued its Order 00–312, as part of a series of orders, concerning the concept known as "universal service." To implement the universal service concept, the Oregon Legislature directed the Commission to create and administer a "universal service fund" (USF) program designed to ensure that basic telephone service is available at reasonable and affordable rates. ORS § 759.425(1). The USF money is used to provide support to eligible telecommunications carriers (ETCs) to help keep basic telephone service affordable. Pursuant to state statute, the OPUC supports the USF program by imposing a surcharge on the sale of retail telecommunications services in this state. ORS § 759.425(4).

Order 00–312 implements an assessment of a surcharge on the sale of both intrastate and interstate/international telecommunications services sold in Oregon. *See* Order 00–312 at 27–28 (attached as exhibit A to the Complaint (# 1)). The Commission determined that interstate and international services sold in Oregon include those services that originate in Oregon regardless of where the call terminates.

AT & T alleges that the USF surcharge on interstate and international telecommunications services relies on and burdens the federal universal service mechanism in violation of the Telecommunications Act of 1996. Specifically, AT & T alleges that the

Order is contrary to 47 U.S.C. §§ 254(f) and 253(a) and is contrary to the scheme of federal/state regulation provided by 47 U.S.C. § 152, which in turn violates the Supremacy Clause of the United States Constitution. AT & T also alleges that the Order improperly burdens interstate commerce by subjecting telecommunications carriers to the risk of multiple taxation in violation of the Commerce Clause of the United States Constitution. Finally, AT & T alleges that the Order violates ORS Ch. 759 because it is beyond the OPUC's authority and because it establishes a fund that is not competitively neutral and has a discriminatory and inequitable impact on interstate and international carriers in Oregon.

## Discussion

The parties agree that the court should apply a *de novo* standard of review of the Commission's determination that ORS § 759.425(4) and its Order 00–312 are consistent with 47 U.S.C. § 254(f). *See U.S. West Communications v. MFS Intelenet, Inc.*, 193 F.3d 1112, 1117 (9th Cir.1999) (considering de novo whether interconnection agreements are in compliance with the Telecommunications Act, section 251); *Orthopaedic Hosp. v. Belshe*, 103 F.3d 1491, 1495 (9th Cir.1997) (a state agency's interpretation of a federal statute is considered de novo).

There is no dispute over the material facts in this case. The Commission's order requires AT & T and other carriers to pay a surcharge on the revenue that they collect from intrastate and international telecommunications service that they provide to service addresses in Oregon. Accordingly, the case is ripe for summary judgment.

AT & T asserts that the Commission's imposition of a surcharge based on revenue earned by providing interstate and

international services is pre-empted by federal law. AT & T further asserts that the Commission's Order violates the Commerce Clause of the United States Constitution. The court finds that the surcharge, to the extent it is based on interstate revenue, is in conflict with 47 U.S.C. § 254. Accordingly, the court declines to address whether Order 00–312 violates the Commerce Clause.

### A. Preemption

■ There are three circumstances in which state law is preempted under the Supremacy Clause, U.S. Const. art. VI, cl. 2, by federal law: (1) express preemption, where Congress explicitly defines the extent to which its enactments preempt state law; (2) field preemption, where state law attempts to regulate conduct in a field that Congress intended the federal law exclusively to occupy; and (3) conflict preemption, where it is impossible to comply with both state and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purpose and objectives of Congress. *English v. General Elec. Co.*, 496 U.S. 72, 78–80, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990); *Southern Pac. Transp. Co. v. Public Util. Comm'n*, 9 F.3d 807 (9th Cir. 1993).

■ Although these categories provide a useful analytic framework, they are not "rigidly distinct." *English*, 496 U.S. at 79 n. 5, 110 S.Ct. 2270. Field preemption, for instance, "may be understood as a species of conflict preemption: A state law that falls within a preempted field conflicts with Congress' intent (either express or plainly implied) to exclude state regulations." *Id.* It is, however, a more potent species, for under field preemption the state regulation is preempted whether or not it actually conflicts with the federal scheme. *See Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230–32, 67 S.Ct. 1146,

91 L.Ed. 1447; *Sayles Hydro Assoc. v. Maughan*, 985 F.2d 451, 455 (9th Cir. 1993). Finally, in all cases, congressional intent to preempt state law must be clear and manifest. *Law v. General Motors Corp.*, 114 F.3d 908, 909–10 (9th Cir.1997) (citations omitted). AT & T contends that federal law preempts the Commission's Order because it conflicts with federal telecommunications law and intrudes upon a field-the duties, charges, and liabilities attendant to providing interstate and international telecommunications services-that is occupied exclusively by federal law. The court finds that the Commission's Order conflicts with federal law.

### 1. Conflict with Federal Law

The Telecommunications Act of 1996 was designed, in part, to help regulate the manipulation of rates for some low-cost urban customers to subsidize more affordable rates for some high-cost rural customers while maintaining competition among providers in an effort to preserve universal service. *Texas Office of Public Utility Counsel v. FCC*, 183 F.3d 393, 406 (1999) (TOPUC). Section 254 provides for joint responsibility between State and federal jurisdictions. State authority to regulate is provided in 47 U.S.C. § 254(f):

A State may adopt regulations not inconsistent with the Commission's rules to preserve and advance universal service. Every telecommunications carrier that provides intrastate telecommunications services shall contribute, on an equitable and nondiscriminatory basis, in a manner determined by the State to the preservation and advancement of universal service in that State. A State may adopt regulations to provide for additional definitions and standards to preserve and advance universal service within that State only to the extent that such regulations adopt additional specific, predictable, and sufficient mechanisms to support such definitions or

standards that do not rely on or burden Federal universal service support mechanisms.

Section 254(f) constrains state regulation by prohibiting regulations inconsistent with FCC rules to preserve and advance universal service, prohibiting discrimination among carriers concerning contribution, and providing that state regulations shall not rely on or burden federal universal service support mechanisms. AT & T argues that the Oregon universal service surcharge runs afoul of these limitation in three ways: (1) the surcharge relies on a federal universal support mechanism; (2) the surcharge burdens a federal universal support mechanism; and (3) the surcharge is not administered on an equitable and nondiscriminatory manner.

a. *Federal Universal Support Mechanism*

As noted above, the 1996 Act prohibits state commissions from adopting regulations toward advancing universal service that rely on federal universal service support mechanisms. AT & T contends that because the Commission's Order depends on the same interstate and international revenues as does the federal universal support program, the Order impermissibly "relies on" federal universal service support mechanisms.

What Congress meant by "rely on" is not delineated. The FCC has provided little to help define the term. The parties only point to a dissent in a recommended decision issued by the FCC. In *In the Matter of Federal–State Joint Board on Universal Service, Second Recommended Decision,* 13 F.C.C.R. 24,744, 1998 WL 814511 at screen page 130, Commissioner Schoenfelder states in dissent:

The overall effect of the Conferees' work was to take an amorphous general universal service concept and break it down into a fund controlled by the Commis-

sion and supported by interstate carriers and funds controlled by the States and supported by intrastate carriers. There would be little purpose in taking such effort to carve the Universal Service world into two spheres if the Federal USF fund was to have a first right to assess both interstate and intrastate revenues. If the Federal USF fund had such a right, any State USF fund making assessments on the same revenues would "rely on or burden" the Federal mechanism, potentially violating Section 254(f).

The Fifth Circuit later reversed the portion of the second recommended decision that included intrastate revenues in the federal calculation of universal service contributions. *TOPUC,* 183 F.3d at 448. The TOPUC court relied on 47 U.S.C. § 152(b) in concluding that the FCC lacked jurisdiction to apply intrastate rate-making. *Id.* at 446–48. The parties do not point to any other agency interpretation of the "rely on" language. AT & T does, however, note that Webster's Dictionary, Webster's II New College Dictionary 937 (1999), defines "relies on" to mean "depends" on-that is to say that a regulation relies on a certain mechanism if it employs such a mechanism in order to achieve a goal.

The Commission offers no definition for "rely on." Instead it argues that the dissenter's opinion is unpersuasive because it was not in the context of the states including interstate revenues in a state fund assessment. The Commission also contends that the dictionary definition is no support at all.

 In the absence of an indication to the contrary, words in a statute are assumed to bear their "ordinary, contemporary, common meaning." *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership,* 507 U.S. 380, 388, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). The Supreme Court has resorted to Webster's

Dictionary in the past when confronted with interpreting statutory phrases. *See, e.g., Fischer v. United States,* 529 U.S. 667, 677, 120 S.Ct. 1780, 146 L.Ed.2d 707 (2000) (The noun "benefit" means "something that guards, aids, or promotes well-being: advantage, good"; "useful aid"; "payment, gift [such as] financial help in time of sickness, old age, or unemployment"; or "a cash payment or service provided for under an annuity, pension plan, or insurance policy." Webster's Third New International Dictionary 204 (1971)). The ordinary meaning of "rely on" encompasses "depends on." Thus, where the Commission's regulations "depend on" the same interstate revenues utilized by the federal universal service fund program, it improperly "relies on" federal universal service support mechanisms." 47 U.S.C. § 254(f). Although the FCC has failed to make this determination, it is the only plausible definition offered. The Commission does not offer another definition or adequately explain why assessing the same revenues as the federal universal service program would not rely on federal universal service support mechanisms.

▆ Section 254(f) also forbids state regulations concerning universal service from burdening federal universal support mechanisms. AT & T argues that the federal universal service fund accumulates a percentage of all interstate and international telecommunications revenue, and that fund grows as carriers' interstate billings grow. AT & T then asserts that because the Oregon surcharge makes providing interstate service less profitable (a portion of the interstate charges are remitted to the state), the surcharge will encourage carriers to cease providing interstate service in Oregon or will reduce the amount of such service. AT & T notes that in Commissioner Schoenfelder' dissent, the FCC Commissioner warned that requiring jurisdictionally-mixed carriers to pay into both the federal and state universal service funds would create powerful and wholly artificial incentives to turn down business on the basis of its intrastate or interstate nature. *Second Recommended Decision,* 13 F.C.C.R. 24,744, 1998 WL 814511 at screen page 132.

There can be no question that taxing interstate telecommunications burdens communications carriers. The same can be true of taxing intrastate telecommunications. The Act intended for carriers to contribute to the universal service fund, both state and federal. Thus, a certain burden must be permitted. However, allowing a state to assess services already assessed by the federal government increases that burden. Following the Fifth Circuit's decision in *TOPUC,* the federal government is no longer permitted to assess intrastate telecommunications activities. Therefore, only interstate activities are subject to this double assessment in Oregon. This could indeed have an impact on a carrier's decision to provide interstate telecommunications in Oregon. As the *TOPUC* court noted with respect to the FCC's decision to assess intrastate activities, "allowing the FCC to assess contributions based on intrastate revenues could certainly affect carriers' business decision on how much intrastate service to provide or what kind it can afford to provide." 183 F.3d at 447, n. 101. The converse is true as well. Because the Oregon surcharge relies on interstate revenues also assessed to contribute to the federal universal support fund, it burdens federal universal support mechanisms.[1]

---

1. The burden of assessment is necessary to support universal service. Had the federal government been able to assess intrastate activity as well as interstate, it follows that a state's assessment of interstate as well as intrastate would not burden federal support mechanisms. This follows from the fact that

*b. Administered on an Equitable and Nondiscriminatory Manner*

Section 254(f) requires equitable and non-discriminatory contributions from carriers providing intrastate telecommunications services. The court disagrees with AT & T regarding its argument that the Commission's Order is inequitable and discriminatory. But as noted above, the Order is contrary to section 254, so this finding is not essential to the court's decision. Accordingly, summary judgment must be granted in favor of AT & T and against The Commission.

## CONCLUSION

For the reasons stated above, defendants' motion for summary judgment (# 27) is denied and plaintiffs' motion for summary judgment (# 24) is granted.

the burden would be equal among the states and the federal government.